UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 11-40-GWU

JIMMY DALE STURGILL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed Sturgill v. Astrue, Pikeville Civil Action No. 09-25-GWU (E.D. Ky.) to appeal from the negative administrative decision on his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After the undersigned's Memorandum Opinion, Order and Judgment of November 10, 2009 (Tr. 328-36), the case was returned to the agency for further consideration of the treating physician's opinion. (Tr. 336). Another negative administrative decision issued (Tr. 313-25) and the case is again before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

11-40  Jimmy Dale Sturgill

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.  See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human

Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework

for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, a new ALJ considered additional evidence in addition to evaluating the treating physician opinion by Dr. Dennis Sandlin from 2006 which was inadequately evaluated in the first ALJ decision. She continued to find that the claimant had "severe" impairments consisting of obesity; mild cardiomegaly; diabetes mellitus; chronic stable angina with moderate probability for coronary artery disease; chronic obstructive pulmonary disease; pneumoconiosis/silicosis; bilateral hearing loss and degenerative arthritis of the shoulders, ankles and knees, bilaterally. She concluded that the new evidence showed that the plaintiff was under a disability beginning February 22, 2010 but not prior to that time. (Tr. 320-25).

At the most recent administrative hearing, the ALJ asked a Vocational Expert (VE) whether a "younger" individual such as the plaintiff, with a "limited" education and a history of "heavy" exertional level work, could perform any jobs if he were limited to "light" level exertion with the ability to stand and walk no more than two hours in an eight-hour day and sit for no more than six hours in an eight-hour day, and also had the following non-exertional restrictions.  He: (1) could occasionally balance, kneel, crawl, stoop, crouch, and climb ramps and stairs; (2) could not be exposed to extreme temperatures, respiratory irritants or wetness/humidity; (3) could not work around hazardous machinery, unprotected heights, vibrating surfaces, or excessively loud background noise; and (4) could not climb ladders, ropes, and scaffolds. (Tr. 753-54).  The VE responded that there were unskilled sedentary jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 755). Given greater restrictions consistent with a February, 2010 examination by Dr. Kevin Blackwell, the VE stated that the sedentary jobs could still be performed.  (Tr. 756-57).  However, under the same set of restrictions but adding absences of 30 to 40 percent of the day, there would be no jobs the person could perform.  (Tr. 758).

Although Dr. Blackwell had not specified that the plaintiff would be limited to the degree specified in the last hypothetical question, the ALJ noted that shortly afterwards the plaintiff had passed out while trying to perform pulmonary function testing, requiring hospitalization and that his condition had subsequently worsened

5

to the extent that he required regular use of oxygen. (Tr. 322).  The ALJ also noted that by August of 2010, the plaintiff's treating pulmonary specialist essentially ruled out all exertional activities.  (Tr. 323, 506-8).  Thus, the ALJ found that by February 22, 2010, slightly before the pulmonary function testing at which he passed out, Mr. Sturgill was unable to perform substantial gainful activity.  (Tr. 323-25).  Before that time, however, she accepted the VE's testimony as establishing that there were jobs the plaintiff could have performed.  (Tr. 323-24).

Mr. Sturgill appeals the unfavorable portion of the ALJ's decision concerning his condition between November 2, 2005 and February 21, 2010.  Specifically, he makes two arguments.  First, he asserts that the opinion of the treating source was again rejected without good reasons.  Second, he maintains that substantial evidence does not support the ALJ's residual functional capacity finding before February 22, 2010.

Concerning the plaintiff's first argument, the court noted in its 2009 remand that Dr. Sandlin had commented that the plaintiff was "pretty dysfunctional" and it "doesn't look like he is able to work in his present condition." (Tr. 241, 334).  This opinion had been given on July 18, 2006.  (Tr. 241).  On August 25, 2006, Dr. Sandlin stated that he encouraged Mr. Sturgill to follow through on disability.  (Tr. 240).  The first ALJ did not even mention these comments, although purporting to give them "some weight." (Tr. 335).  A remand was necessary because it was clear that the ALJ's decision did not follow the administrative requirement for giving good

reasons for giving diminished or no weight to a treating physician's opinion.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).

On remand, the second ALJ stated that she would give no weight to Dr. Sandlin's July, 2006 opinion that he did not "look like" he was able to work because he "did not thoroughly evaluate the claimant using objective testing but appears to have based his opinion in part, on what the claimant reported to him during that first appointment."  (Tr. 322).  Additionally, she cited only one emergency room visit between the alleged onset of disability through February 22, 2010.  (Id.).

The plaintiff asserts that this brief discussion by the ALJ did not encompass all of the factors set out in 20 C.F.R. § 1527(d)(2), including the length of the treatment relationship, the frequency of examinations, the consistency of the opinion with the record as a whole (including the plaintiff's inability to afford extensive testing) and the consistency of Dr. Sandlin's 2006 opinion with an August 30, 2010 assessment by Dr. Mahmood Alam (Tr. 506-8), and the overall supportability of Dr. Sandlin's opinion in the light of longitudinal evidence.

While the ALJ's discussion was not as thorough as it could have been, the ALJ did implicitly discuss the length of the treatment relationship and the frequency of examination by noting that the opinion was given at the plaintiff's first appointment with Dr. Sandlin.  Although Dr. Sandlin clearly became a treating source in that he saw the plaintiff on several occasions over the next few years (e.g., Tr. 237-39, 548-53), he did not subsequently discuss the plaintiff's ability to

work.  It is certainly reasonable for a fact finder to give less weight to the opinion of even a treating source opinion given after one examination than the same opinion given after several years of treatment.

Concerning the consistency of the opinion with the record as a whole, and its overall supportability in the light of longitudinal evidence, while the ALJ did not specifically contrast Dr. Sandlin's opinion with other records, she did discuss in detail a pulmonary function study from April, 2005 showing an FEV1 of 65 percent of normal and the opinion of a pulmonary specialist that same month that Mr. Sturgill needed to stay away from drilling rocks in coal mines and choose a job that was not in a dusty atmosphere.  (Tr. 166, 174).  In other words, this source did not give an opinion that was consistent with a complete inability to work.  She also noted that a state agency consultative examiner, Dr. K. M. Monderewicz, found moderate to severe impairments in the plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, push, and pull heavy objects due to difficulty with dyspnea on exertion.  (Tr. 216).  Furthermore, Dr. Kevin Blackwell conducted the first of two consultative examinations on June 7, 2009, and concluded that the plaintiff could perform lifting of no more than 45 pounds maximum and 30 pounds frequently, could sit eight hours per day assuming normal positional changes, could stand two hours a day (no more than 20 to 30 minutes at a time) and walk up to two hours at his own pace.  (Tr. 413).  He could not squat, crawl, or stoop, or be exposed to dusty environments, extreme heat or cold, or unprotected heights.  Bending at the

waist and kneeling was limited to one-third of the day, and he should not reach above his head while carrying a load of no more than five pounds more often than two-thirds of the day. (Id.). The ALJ noted that the opinions of state agency physicians David Swan and Timothy Gregg (Tr. 221-36), given in 2006, were consistent with Dr. Blackwell's June, 2009 opinion and supported by pulmonary function testing up until February, 2010. (Tr. 322).

Thus, the ALJ permissibly considered the factors in § 404.1527(d)(2) without explicitly citing them. See Infantado v. Astrue, No. 07-1656 (6th Cir. Feb. 7, 2008), at 8. The Infantado court also distinguished the case of Rogers v. Commissioner of Social Security, 486 F.3d 234 (6th Cir. 2007), cited by the plaintiff in the present case, because in Rogers the ALJ had simply stated that "the record does not support the limitations of the severity suggested by [the treating physician]." 486 F.3d at 246. The ALJ's "failure to *explicitly* cite the regulation factors is no impediment to meaningful review and is therefore no grounds for reversal." Infantado, supra, at 8.

Regarding the plaintiff's second argument that substantial evidence did not support the ALJ's residual functional capacity finding before February 22, 2010, it depends to a great extent on his assertion that the report of the state agency reviewers (Tr. 221-36, 266-67) and the 2009 report of Dr. Blackwell were inadequate because they did not have all of the available evidence available for review. This argument could conceivably have merit if Dr. Sandlin's opinion as a

9

11-40  Jimmy Dale Sturgill

treating source were otherwise entitled to controlling weight, but for the reasons previously given, it was reasonably discounted.  As a result, no treating, examining, or reviewing source opined that the plaintiff was disabled during the period at issue and the ALJ could reasonably have relied on the restrictions of Dr. Blackwell.  In fact, as the plaintiff points out, the VE testified that even with restrictions taken from Dr. Blackwell's second examination in February, 2010, there were sedentary jobs that the plaintiff could perform (Tr. 756-57) and it was only after the ALJ added that the hypothetical individual would be unable to stay on task 30 to 40 percent of the work day that the VE testified that there would be no jobs (Tr. 757-58).  The plaintiff simply failed to carry his burden of proving his inability to work prior to the onset day selected by the ALJ.

The decision will be affirmed.

This the 5th day of April, 2012.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**